**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL SOSA,<br><br>*Plaintiff*,<br><br>v.<br><br>GREATER ALLIANCE FEDERAL CREDIT UNION, and TRANSUNION, LLC,<br><br>*Defendants*. | Civil No.: 20-cv-818 (KSH) (SDA)<br><br>**OPINION** |

**Katharine S. Hayden, U.S.D.J.**

**I.      Introduction**

Michael Sosa has renewed his motion for partial summary judgment on his claims against both Greater Alliance Federal Credit Union ("Greater Alliance") and TransUnion, LLC ("TransUnion"). (D.E. 117.) The Court previously issued an opinion (D.E. 85) in which it denied Sosa's motion for summary judgment (D.E. 48) on defendants' liability for damages based on their alleged violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"). The basis for the denial, which was made without prejudice, was the absence of a Final Pretrial Order ("FPTO") to act as a "backstop" for a dispositive ruling about whether these defendants violated the FCRA as a matter of law and if they did, whether their conduct rose to the level of willfulness. (*See* D.E. 85 at 18.) As the original motion practice was set up, Sosa sought a substantive ruling on liability but not a finding as to the amount of damages; TransUnion cross-moved on both liability and damages (D.E. 49); and Greater Alliance defended against Sosa's motion but did not seek affirmative relief (D.E. 69). In the opinion, the Court anticipated that once the parties jointly filed their FPTO under the Magistrate Judge's oversight, Sosa would renew his summary judgment

1

motion, which the Court now addresses. After the parties' submissions on the motion were filed, Sosa's claims against TransUnion were dismissed with prejudice by consent (D.E. 131).

**II.    Background**

Sosa argues that there is no genuine dispute that Greater Alliance failed in its FCRA obligations to adequately investigate his disputes and as a matter of law he deserves summary judgment in his favor. In its earlier opinion the Court laid out the facts, but will recite them again with the benefit of the FPTO.

On December 7, 2012, Sosa obtained a personal loan of $2,054.24 from Greater Alliance. (Final Pretrial Order ("FPTO") § 5, ¶ 14.)[1] He eventually stopped making timely payments, and in 2014 the account was charged off and went into collections. (FPTO § 5, ¶ 15.) Sosa negotiated a settlement with Greater Alliance and resolved the debt in May 2015. (FPTO § 5, ¶¶ 16-17.) The parties agree that the account became a settled charge-off account that was paid in full and closed in May 2015. (FPTO § 5, ¶¶ 28-29; D.E. 120-1, Def. Stmt. Facts ¶ 11-12.)

When Greater Alliance first issued the loan to Sosa, it only reported the account to one of the three existing credit reporting agencies—Experian. (D.E. 120-1, Def. Stmt. Facts ¶ 8.) In June 2018, Greater Alliance began reporting the account to the two other credit reporting agencies—Equifax and TransUnion. (FPTO § 5, ¶¶ 4, 5, 19; D.E. 120-1, Def. Stmt. Facts ¶ 8.) Greater Alliance claims it provided the same information from its e-OSCAR computer portal system to all three credit reporting agencies. (D.E. 120-1, Def. Stmt. Facts ¶¶ 9-11.)

---

[1] Unless otherwise indicated, citations to section 5 of the final pretrial order are factual assertions that are stipulated, admitted, or otherwise undisputed.

TransUnion issued a credit report on July 16, 2018 with a trade line that listed Sosa's Greater Alliance account as follows:

```
GREATER ALLIANCE FCU #65447007L**** (40 W CENTURY RD, PARAMUS, NJ 07652, (201) 599-5500)
Date Opened:      12/07/2012           Balance:              $0          Pay Status:  >Charged Off<
Responsibility:   Individual Account   Date Updated:         06/30/2018  Terms:       $3,757 per month, paid Bi-weekly
Account Type:     Installment Account  Payment Received:     $0                       for 29 months
Loan Type:        UNSECURED            Last Payment Made:    12/26/2013  Date Closed: 06/30/2018
                                       High Balance:         $2,054
                                       Original Charge-off:  $1,734
Remarks: >SETTLED-LESS THAN FULL BLNC<; >UNPAID BALANCE CHARGED OFF<
Estimated month and year that this item will be removed: 01/2021
```

| | 05/2018 | 04/2018 | 03/2018 | 02/2018 | 01/2018 | 12/2017 | 11/2017 | 10/2017 | 09/2017 | 08/2017 | 07/2017 | 06/2017 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | C/O | C/O | C/O | C/O | C/O | C/O | C/O | C/O | C/O | C/O | C/O | C/O |

| | 05/2017 | 04/2017 | 03/2017 | 02/2017 | 01/2017 | 12/2016 | 11/2016 | 10/2016 | 09/2016 | 08/2016 | 07/2016 | 06/2016 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | C/O | C/O | C/O | C/O | C/O | C/O | C/O | C/O | C/O | C/O | C/O | C/O |

(FPTO § 5, ¶ 20.)

Sosa reviewed the credit report and noticed several inaccuracies that he argues have negatively impacted his credit score. (D.E. 117-1, Plf. Mov. Br. at 2.) In particular, the pay status was listed as "Charged Off" instead of "Paid Charge Off" or "Settled"; the last payment date and the closing date were respectively listed as December 2013 and June 2018 instead of May 2015; and the "Terms" included a monthly payment obligation even though the debt had already been settled in full. (*Id.*; FPTO § 5, ¶ 20.)

The following day, July 17, 2018, Sosa called TransUnion to dispute the errors he found in the credit report. (FPTO § 5, ¶ 20.) In accordance with its normal procedure when receiving a consumer dispute, TransUnion "reinvestigated" by completing an Automated Consumer Dispute Verification ("ACDV") form and sending it to the furnisher of the line of credit, Greater Alliance, to verify the information's accuracy. (FPTO § 5, ¶¶ 8, 9, 22.) The ACDV form sent on July 19, 2018 included an account status code 97, meaning "Unpaid balance reported as a loss (charge off)," a special comment code "AU," meaning the account was settled for less than the full amount, an inaccurate final payment date of December 2013, and an inaccurate closing date of June 2018. (D.E. 120-3, Siachos Decl., Ex. J; *see* FPTO § 5, ¶¶ 12, 23-26; FPTO § 6, ¶ 2.)

3

After receiving the ACDV form, Greater Alliance "conduct[ed] an investigation." (FPTO § 5, ¶ 27; D.E. 120-3.) Cheryl Socha, Greater Alliance's collections manager, testified at her deposition that when she receives consumer disputes attached to ACDV forms, she determines whether the information the consumer is disputing is incorrect. (Siachos Decl., Ex. A, "Socha Dep." 114:1-115:6.) She also testified that after receiving this ACDV form, she took a screenshot of Sosa's account information from Greater Alliance's e-OSCAR portal on July 30, 2018, which indicated that the account was reporting as a "settled charge off and account paid in full for less than the balance." (Socha Dep. 88:18-23; *see* D.E. 120-3, Siachos Decl., Ex. C.) That same day, she responded on the ACDV form as follows: "RESPONSE CODE: 01 ACCT INFO ACCURATE AS OF DATE REPORTED . . . AUTH BY: CHERYL SOCHA." (D.E. 120-3, Siachos Decl., Ex. J; FPTO § 5, ¶ 27; D.E. 120-3.) TransUnion forwarded the results to Sosa on July 31, 2018. (FPTO § 5, ¶ 30.)

Over the course of the next year, the trade line continued to reflect inaccuracies, and Sosa continued to submit disputes to TransUnion—a second dispute on August 21, 2018, a third dispute on March 14, 2019, a fourth dispute on May 16, 2019, and a fifth dispute on June 19, 2019—pointing out the inaccuracies and attaching a copy of his March 3, 2015 settlement check.[2] (FPTO § 5, ¶¶ 33-52.) In response to each dispute, TransUnion sent an ACDV form to Greater Alliance including the inaccurate account status, special comment code, final payment date, and closing date, Greater Alliance responded that the information was accurate as of the date reported, and TransUnion forwarded the results to Sosa. (FPTO § 5, ¶¶ 34-39, 41-44, 46-50, 54, 57-58; D.E.

---

[2] The content of Sosa's disputes is discussed in more detail in this Court's prior opinion (D.E. 85) denying Sosa's and TransUnion's cross-motions for summary judgment.

4

120-3, Siachos Decl., Ex. K; Ex. L; Ex. M; Ex. N.)  The trade line remained unchanged and inaccurate.

On June 19, 2019, the same day he submitted his fifth dispute to TransUnion, Sosa sent a separate letter directly to Greater Alliance, which prompted Socha to run two Experian Bullseye Reports—one on June 26, 2019 and another on August 8, 2019.  (FPTO § 5, ¶¶ 52-53, 56, 59; Socha Dep. 75:19-21.)  These both showed that Experian was correctly reporting Sosa's account as a settled charge-off that had been closed in May 2015.  (FPTO § 5, ¶¶ 56, 59; Socha Dep. 75:19-76:8.)  Socha testified that she relied on the Experian reports to conclude that Greater Alliance reported accurate information to all three credit reporting agencies, which meant any error in the trade line had been made on TransUnion's end.  (Socha Dep. 52:6-15, 53:17-55:10.)

The same day she received the second Bullseye Report from Experian, Socha submitted an Automated Universal Dataform ("AUD") to TransUnion requesting an immediate change to Sosa's credit report.  (FPTO § 5, ¶¶ 60; D.E. 120, Def. Opp. Br. at 7.)  Socha explained in her deposition that Greater Alliance submits an AUD to a credit reporting agency when it wants to correct an inaccuracy "right away" in a credit report.  (Socha Dep. 63:3-5; 64:3-65:4.)  The AUD included the correct account status code of 64 (which means "Account paid in Full; was a Charge-off"), a final payment date of May 29, 2015, a closing date of May 31, 2015, and a current balance of $0.  (D.E. 120-3, Siachos Decl., Ex. E.)

TransUnion's September 4, 2019 trade line included these corrections, reading as follows:

```
GREATER ALLIANCE FCU #65447007L**** (40 W CENTURY RD, PARAMUS, NJ 07652, (201) 599-5500)
Date Opened:       12/07/2012              Balance:              $0                    Pay Status: >Account paid in Full; was a
Responsibility:    Individual Account      Date Updated:         05/29/2015                         Charge-off<
Account Type:      Installment Account     Payment Received:     $0                    Terms:      $0 per month, paid Bi-weekly for 29
Loan Type:         UNSECURED               Last Payment Made:    12/26/2013                        months
                                           High Balance:         $2,054                Date Closed: 05/29/2015
Remarks: >SETTLED-LESS THAN FULL BLNC<; CLOSED
Estimated month and year that this item will be removed: 11/2020
```

(FPTO § 5, ¶ 61.)

Sosa alleges the inaccuracies that remained on his credit report from July 2018 to September 2019 reduced his credit score and caused him to be denied a mortgage from Visions Federal Credit Union, a loan from Discover, and a loan from Goldman Sachs. (FPTO § 5, ¶¶ 40, 62.) He argues in his renewed motion that he is entitled to summary judgment on the issue of liability because "[Greater Alliance] knew the status should be updated, knew the date it received [Sosa's] last payment, and knew the date it closed the account," and "[g]iven the obvious errors and the numerous disputes received by [Greater Alliance], no jury could reasonably conclude that [Greater Alliance] conducted a reasonable investigation when it continuously verified information it knew to be inaccurate." (D.E. 117-1, Plf. Mov. Br. at 3.) He asserts Greater Alliance violated 15 U.S.C. § 1681s-2 by willfully or negligently failing to comply with furnishers' obligations, including the obligation to report accurate information to consumer reporting agencies like TransUnion and the obligation to investigate in response to Sosa's consumer disputes. (Compl. ¶¶ 27-34.) Sosa seeks actual and punitive damages pursuant to 15 U.S.C. § 1681n or 15 U.S.C. § 1681o. (Compl. ¶¶ 35.)

Greater Alliance opposes (D.E. 120) Sosa's motion, arguing trial must proceed on *both* liability and damages because there are genuine issues of material fact. Greater Alliance presents evidence that it "furnished the correct information regarding the account to all three major credit reporting agencies" and that TransUnion "inexplicably" reported the incorrect account status and closing date on its credit report. (D.E. 120, Def. Opp. Br. at 4.) Greater Alliance also argues that in response to the disputes it received from TransUnion, Greater Alliance conducted proper investigations by confirming that it had furnished the correct information to TransUnion and informing TransUnion that the information was accurate as reported. (*Id.*) It provides the same

attachments and exhibits that it provided in opposition to Sosa's previous motion for summary judgment. (*See* D.E. 69.)

## III. Standard of Review

A motion for summary judgment should only be granted if the movant has shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" if the evidence would allow a reasonable factfinder to find in favor of the nonmoving party. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 289 (3d Cir. 2018). A disputed fact is "material" if it "might affect the outcome of the suit under the governing law." *Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 345 (3d Cir. 2022) (cleaned up).

When the moving party has the burden of proof, that party must present credible evidence showing no genuine dispute of material fact. *Wasserman v. Bressman*, 327 F.3d 229, 238 (3d Cir. 2003). To oppose summary judgment, the nonmoving party must present "specific facts" showing a "genuine issue for trial"—a showing that requires "do[ing] more than simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citing Fed. R. Civ. P. 56(e)). The nonmoving party may rely on "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," so long as the facts presented can be "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(1)(A), (c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Bare assertions, conclusory allegations, or suspicions will not suffice." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288-89 (3d Cir. 2018) (cleaned up).

At the summary judgment stage, the Court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party; the Court may not, however, resolve credibility disputes or weigh the evidence. *Burton v. Teleflex Inc.*, 707 F.3d 417, 425, 428-29 (3d Cir. 2013).

## IV. Discussion

The FCRA imposes duties on "furnishers" like Greater Alliance who provide information to credit reporting agencies like TransUnion. One of those duties applies when a consumer disputes the completeness or accuracy of information provided to a consumer reporting agency. When furnishers receive notice of such a dispute, they must: (1) "conduct an investigation with respect to the disputed information"; (2) "review all relevant information provided by the consumer reporting agency"; (3) "report the results of the investigation to the consumer reporting agency"; (4) report any inaccuracies, if found, to all consumer reporting agencies who may have received the inaccurate information; and (5) promptly "modify," "delete," or "permanently block the reporting" of any inaccurate information. 15 U.S.C. § 1681s-2(b)(1). A furnisher's investigation into a consumer complaint "must be reasonable." *Seamans v. Temple Univ.*, 744 F.3d 853, 864 (3d Cir. 2014) (cleaned up).

As a preliminary matter, to succeed on a § 1681s-2(b) claim, a plaintiff must show that the consumer reporting agency was reporting information that was inaccurate. *See, e.g.*, *Esperance v. Diamond Resorts*, 2022 WL 1718039, at *6-9 (D.N.J. May 27, 2022) (O'Hearn, J.) (granting summary judgment for the defendant on plaintiff's FCRA claims because the plaintiff failed to show that the disputed information was inaccurate). Once the plaintiff has done so, the Court will consider whether the furnisher's investigation was reasonable.

8

A reasonable investigation "is one that a reasonably prudent person would undertake under the circumstances." *Seamans*, 744 F.3d at 864 (cleaned up). The standard is an objective one, and the burden of showing the investigation was unreasonable rests with the plaintiff. *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 37 (1st Cir. 2010). Reasonableness is "normally" a question for the jury "unless the reasonableness or unreasonableness of the procedures is beyond question." *Seamans*, 744 F.3d at 864-65 (cleaned up). When assessing reasonableness, a factfinder must "balance the potential harm from inaccuracy against the burden of safeguarding against such inaccuracy." *Id.* at 865 (cleaned up). The factfinder should also consider "the content of the notice of dispute" the furnisher received from the consumer reporting agency because a notice containing "only scant or vague allegations of inaccuracy" may warrant "a more limited investigation." *Id.*[3]

A reasonable investigation "requires an inquiry likely to turn up information about the underlying facts and positions of the parties, not a cursory or sloppy review of the dispute." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1155 (9th Cir. 2009). If the defendant could not have discovered inaccuracies through an alternative investigation, the defendant's investigation will be found to be reasonable. *See, e.g.*, *Suluki v. Credit One Bank, N.A.*, 666 F. Supp. 3d 403, 412 (S.D.N.Y. 2023) (denying summary judgment for plaintiff because plaintiff failed to show that an alternative investigation would have led defendant to discover inaccuracies); *Timms v. USAA Fed. Sav. Bank*, 2020 WL 12618897, at *9, 11 (D.S.C. Aug. 20, 2020) (denying

---

[3] To the extent Sosa argues Greater Alliance provided inaccurate information to TransUnion, the Court may not address it. The FCRA does not provide for a private right of action for a furnisher's failure to report accurate information to a credit reporting agency in the first instance. *See* 15 U.S.C. § 1681s-2(d); *Esperance v. Diamond Resorts*, 2022 WL 1718039, at *4 (D.N.J. May 27, 2022) (O'Hearn, J.) ("[A] furnisher of credit information owes no legal duty to a private plaintiff under the FCRA for reporting factually inaccurate information in the first instance.").

summary judgment for plaintiff because plaintiff did not show that defendant could have discovered inaccuracies through different or additional investigation, particularly when there were no "red flags" or information in defendant's records that would have led it to a different conclusion).

The FCRA "provide[s] private rights of action for willful and negligent noncompliance with any duty imposed by the FCRA." *Philibin v. Trans Union Corp.*, 101 F.3d 957, 962 (3d Cir. 1996). If a defendant's noncompliance is negligent, the FCRA allows a consumer to recover actual damages and attorneys' fees and costs, and if the noncompliance is willful, a consumer may also recover punitive damages. 15 U.S.C. §§ 1681n, o. A "reckless disregard for the statute's terms" is considered a willful violation. *Seamans*, 744 F.3d 853. A furnisher acts with reckless disregard by taking an "action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68 (2007).

**V.     Analysis**

As a preliminary matter, there is no dispute that Sosa's trade line and TransUnion's ACDV forms contained inaccurate information—the account status should have been "Paid in Full" (code 64) instead of "Charged Off" (code 97), and the closing date should have been the day the account was closed in May 2015 instead of the day Greater Alliance began reporting the account to TransUnion in June 2018. (FPTO § 5, ¶¶ 13, 31-32; D.E. 120-1, Def. Stmt. Facts ¶¶ 5-6, 16.) The Court's analysis, therefore, hinges on the reasonableness of Greater Alliance's investigations and responses to TransUnion's ACDV forms.

Greater Alliance contends its responses to the ACDV forms were reasonable because it was not required to investigate the incorrect account status, closing date, and final payment date. It argues the ACDV forms it received either indicated that Sosa was "disputing information ***other***

10

*than* the account status and the closing date" or included information that was being reported correctly. (D.E. 120, Def. Opp. Br. at 4.) Even construing the facts in Greater Alliance's favor, the Court disagrees.

The first ACDV form—sent on July 19, 2018—noted that Sosa "Disputes Current Balance and/or Amount Past Due" and asked Greater Alliance to "Verify all Account Information." (D.E. 120-3, Siachos Decl., Ex. J.) Even without the form specifically asking for verification of the account status, closing date, or last payment date, Greater Alliance should have investigated "all Account Information" listed on the ACDV form. In doing so, it would have uncovered the inaccuracies without much effort, as there is no dispute that Greater Alliance's e-OSCAR computer portal system had readily available information to confirm that TransUnion reported the wrong closing date, last payment date, monthly payment obligation, and account status. In fact, Greater Alliance's collections manager, Socha, testified that after receiving this ACDV form from TransUnion, she took a screenshot of the e-OSCAR portal on July 30, 2018, which showed the account was reporting as a "settled charge off and account paid in full for less than the balance" in May 2015. (Socha Dep. 88:18-23.) Instead of correcting the errors in the ACDV form, Socha verified the information as accurate.

The next two ACDV forms—sent on August 24, 2018 (*id.* Ex. K) and on March 22, 2019 (*id.* Ex. L)—both stated that Sosa "paid the original creditor before . . . charge off." Although the forms should have said Sosa paid *after* charge off, they both nevertheless instructed Greater Alliance to "Verify Account Status." In doing so, Greater Alliance would have uncovered from its e-OSCAR portal that the account status "97" (charge off) should have been changed to "64" (paid in full).

11

The May 21, 2019 ACDV form noted that Sosa "Disputes Current Balance and/or Amount Past Due" and specifically asked Greater Alliance to "Verify all Account Information," "Verify closed date," and verify "current status." (*Id.* Ex. M.)  The June 28, 2019 ACDV form noted that Sosa "[s]ettled this account and paid it off in March 2015" and, again, asked Greater Alliance to "Verify Account Status," "Verify all Account Information," and "Verify closed [] date." (Ex. N (cleaned up).)  Greater Alliance responded that all information was accurate.

In each of the five ACDV forms sent to Greater Alliance over the course of a year, Greater Alliance had the obligation to verify either *all* account information or, more specifically, the account status and the closing date.  Even a "cursory or sloppy" comparison of each ACDV form to the e-OSCAR portal would have uncovered the inaccurate account status, monthly payment obligation, closing date, and final payment date in Sosa's trade line. *See Gorman*, 584 F.3d at 1155.  The undisputed fact that Greater Alliance responded to each ACDV form by stating the account information was accurate shows that Greater Alliance did not conduct a reasonable investigation in response to Sosa's disputes.  The Court is satisfied that there is no evidence in the record to provide a basis for any reasonable juror to conclude otherwise.

Greater Alliance relies on the Experian reports Socha generated in June and August 2019 as evidence that it conducted a reasonable investigation in response to the ACDV forms.  However, those reports were run *over a year* after Sosa began submitting disputes and only after Sosa submitted a complaint *directly* to Greater Alliance.  Further, Greater Alliance's submission of the AUD form in August 2019 requesting an immediate correction to Sosa's trade line merely provides further support for Sosa's position—that despite receiving notice of Sosa's disputes since July 2018, Greater Alliance either negligently, recklessly, or willfully did not fulfil its obligation to reasonably investigate and correct errors in Sosa's trade line until the fifth ACDV form filed over

12

a year later. As the Court noted in its prior opinion (D.E. 85), "in the record before the Court there is no evidence of Greater Alliance's investigatory procedures between July 30, 2018 and August 8, 2019 despite the fact that Sosa lodged four disputes with TransUnion during that timeframe." (D.E. 85 at 15.) Greater Alliance has not provided any additional evidence in connection with this motion to change that conclusion.

Greater Alliance responded to all five of the ACDV forms confirming the accuracy of the information contained in them, this despite its own records indicating that the information was not accurate. The record does not reflect that Greater Alliance investigated Sosa's disputes in response to the first four ACDV forms—something it was specifically obligated to do under 15 U.S.C. § 1681s-2(b). The conclusion is inescapable that but for Sosa's dogged efforts to clear up the inaccuracies, they would have remained. Indeed, the tenor of this Court's prior opinion was such that Greater Alliance's opposition to Sosa's renewed motion repeats the intransigence that Sosa earlier faced. The hill to die on is the extent of damages, but for now, the issue of liability can and will be settled on summary judgment in Sosa's favor. *See, e.g.*, *Wood v. Credit One Bank*, 277 F. Supp. 3d 821, 851-54 (E.D. Va. 2017) (concluding defendant failed to conduct a reasonable investigation as a matter of law and granting summary judgment for plaintiff where defendant responded to six ACDV forms that the fraud dispute had been resolved, despite defendant's own records indicating that the fraud dispute had *not* been resolved); *see also Hrebal v. Nationstar Mortg. LLC*, 385 F. Supp. 3d 849, 852-53 (D. Minn. 2019) (in granting summary judgment for plaintiff on liability, collecting cases granting summary judgment in plaintiff's favor and observing that such a result is "not . . . unprecedented"); *Miller v. Westlake Servs. LLC*, 637 F. Supp. 3d 836, 855 (C.D. Cal. 2022) (granting partial summary judgment for plaintiff); *Sherman v. Sheffield Fin., LLC*, 627 F. Supp. 3d 1000 (D. Minn. 2022) (granting partial summary judgment for plaintiff).

13

## VI. Conclusion

For the foregoing reasons, the Court grants plaintiff's motion for summary judgment as to liability only. An appropriate order will enter.

Dated: August 23, 2024                                        /s/ Katharine S. Hayden
                                                              Katharine S. Hayden, U.S.D.J.